FILED

2007 Aug-31  PM 04:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| EVA GAMBLE, et al., | ] |
| | ] |
|     **Plaintiffs,** | ] |
| | ] |
| **v.** | ] |
| | ]      **CV-06-BE-4909-S** |
| **PINNOAK RESOURCES, LLC, et al.,** | ] |
| | ] |
|     **Defendants.** | ] |

**<u>MEMORANDUM OPINION</u>**

This case comes before the court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (doc. 8) and Defendant Oak Grove Resources, LLC's ("Oak Grove") Motion to Dismiss (doc. 9), in which the other Defendants join if their motion is denied.[1]   The court has reviewed the motions and the parties' submissions and has made an independent review of its jurisdiction.  For the reasons stated below, the court concludes that the *Rooker-Feldman* doctrine does not divest the court of subject matter jurisdiction and, therefore, denies Oak Grove's Motion to Dismiss on that ground.  Having determined that proper jurisdiction rests in this court, the court reaches the merits of Defendants' other arguments in support of dismissal or summary judgment, and, for the reasons stated below, DENIES Oak Grove's Motion to Dismiss (doc. 9); and GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss, or in the

---

[1] In connection with these motions and related briefs and evidentiary submissions, Plaintiffs also filed a Motion for Leave to Supplement Submission (doc. 20) related to Defendants' ownership and operation of the Oak Grove mine, and Defendants filed a Motion to Strike Plaintiffs' Evidentiary Submission (doc. 34) related to this court's jurisdiction under *Rooker-Feldman*.  The court ruled on these motions in a separate order.  *See* Mem. Op. & Order (Aug. 14, 2007) (doc. 36).

Alternative, for Summary Judgment (doc. 8).  Specifically, Plaintiffs have failed to introduce

sufficient evidence to raise a genuine issue of material fact as to Defendant PinnOak Coal Sales,

LLC's involvement in the ownership, operation, or management of the Concord Coal Preparation

Plant ("Plant"); thus, the court GRANTS Defendants' Motion for Summary Judgment as to that

Defendant, but DENIES the motion as to all other Defendants.

## I.  BACKGROUND

On July 31, 1996, a group of individuals later certified as a class, which included all

Plaintiffs in the case before this court, filed a complaint in the Circuit Court of Jefferson County,

Alabama, Bessemer Division.  The complaint sought monetary damages and injunctive relief

based on the release of particulate matter and other airborne emissions from the operation of the

Plant.  The plaintiffs claimed injuries to their property and health based on air pollution and

damages to real and personal property caused by airborne coal dust.

On October 4, 2002, the parties entered into a settlement agreement, in which the

Defendants[2] agreed to a number of remedial measures in exchange for release, settlement, and

compromise of "all known and unknown claims . . . by reason of, arising from or in any way

relating in whole or in part to any discharge or release of particulate matter or other airborne

emissions during the Applicable Time Period."  (Settlement Agreement §§ 3.1-5.1) (doc. 10, Ex.

3).  The Applicable Time Period was January 1, 1990 through December 22, 2002.  (*Id.* § 2.)  The

circuit court approved the settlement agreement on October 23, 2002.  *See* Final Judgment Order,

---

[2] The defendants named in the state court complaint were U.S. Steel Mining Company, LLC; United States Steel Corporation; and KLee Processing, Inc.  Defendants in the action before this court are successors in interest to the state defendants.  The parties do not dispute that the settlement agreement released the state defendants' successors.  Therefore, for simplicity, this court simply uses "Defendants" throughout this memorandum opinion to refer to both the state defendants and federal Defendants because their distinction is irrelevant for purposes of the issues before the court at this time.

*White v. U.S. Steel Mining Co., LLC*, Case No. CV-97-626 (Ala. Cir. Ct. Jefferson County 2002) (doc. 10, Ex. 5).

On December 20, 2006, Plaintiffs filed this complaint in federal court against PinnOak Resources, LLC; Oak Grove Resources, LLC; PinnOak Coal Sales, LLC; Natural Resources Partners, L.P.; and Questar Management Company, LLC.  Plaintiffs alleged that Defendants violated "federal and state safety regulations to the degree that they have allowed dangerous quantities of highly explosive and highly flammable materials [*e.g.*, coal float dust, coal fines, and coal dust] to accumulate within the plant." (Compl. ¶ 2) (doc. 1).   Plaintiffs petition this court to order remediation, removal and/or neutralization of the materials, and installation of safety measures to prevent an explosion.  (*Id.* ¶ 8.)

On January 16, 2007, Defendants PinnOak Resources, PinnOak Coal Sales, Natural Resources Partners, and Questar moved to dismiss Plaintiffs' action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that they "do not now, nor have they ever owned, operated, leased, or managed the Plant." (Defs.' Mot. ¶ 5.)  On that same day, Defendant Oak Grove moved to dismiss Plaintiffs' complaint on the ground that the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.  (Oak Grove's Mot. 2.)  In the alternative, Oak Grove argues that Plaintiffs' claims are barred by *res judicata*, release, and accord and satisfaction; that Plaintiffs are not proper parties to bring a public nuisance action; and that the Mine Safety and Health Administration ("MSHA") has primary jurisdiction over the issues.  (*Id.*)

The court ordered Plaintiffs to show cause in writing why Defendants' motion to dismiss should not be granted because they do not and have not owned, operated, or managed the Oak Grove mine.  *See* Order to Show Cause (Jan. 22, 2007) (doc. 11).  In response, Plaintiffs submitted a number of exhibits indicating that various Defendants hold themselves out as owning,

operating, or managing the Oak Grove mine.  (*See* Pls.' Evid. Sub.) (doc. 15).  These exhibits included Defendants' press releases, deposition and trial testimony from unrelated proceedings, previously filed state court pleadings, and MSHA database excerpts.  Subsequently, Plaintiffs supplemented this submission with additional similar documents, some of which describe the business relationships among Defendants.  (*See* doc. 20.)  Defendants replied to Plaintiffs' response by submitting additional affidavits in which officers of the Defendants declare that, other than Oak Grove, none of the Defendants owns, operates, or manages the Plant.  (*See* doc. 19.)

After reviewing the parties' submissions and hearing oral argument on the pending motions, the court set an evidentiary hearing to address the issue of whether the *Rooker-Feldman* doctrine divests this court of subject matter jurisdiction.  *See* Order Setting Hearing (May 1, 2007) (doc. 28).  Plaintiffs and Defendants submitted additional briefs and exhibits concerning this court's subject matter jurisdiction.  Defendants submitted the affidavit of Larry Bennett, Environmental and Land Manager of the Oak Grove mine, as well as supporting photographs, which described and demonstrated the layout of the Plant, the remedial measures undertaken in connection with the 2002 settlement agreement, and the alleged accumulations at issue in this case.  (*See* doc. 29.)  Plaintiffs likewise submitted several exhibits, including the affidavit of Daryl H. Dewberry, District Vice President of the United Mine Workers of America ("UMWA").  (*See* doc. 32.)  Based on his review of the 2002 settlement agreement and related documents, testimony and reports from an unrelated state court proceeding concerning dust accumulation at the Oak Grove mine, and historical MSHA data about the Plant – particularly MSHA citations related to accumulation – Dewberry concluded that the accumulation was caused by employee cutbacks and poor housekeeping and did not reach allegedly dangerous levels until July 2003.  Plaintiffs also submitted the documents upon which Dewberry relied.

## II.  SUBJECT MATTER JURISDICTION

Prior to considering the substance of Defendants' arguments, the court must first determine whether it has subject matter jurisdiction over Plaintiffs' claim.  Oak Grove challenges the court's subject matter jurisdiction under the *Rooker-Feldman* doctrine.  Oak Grove argues that Plaintiffs' claim in federal court is "materially indistinguishable from those dismissed by" the class action settlement agreement and the Alabama state court's final judgment approving the settlement agreement.  (Oak Grove's Mem. of Law for Evid. Hr'g 4) (doc. 29).  The state court proceeding, Oak Grove argues, resulted in fourteen types of injunctive relief that would also provide the remedy for Plaintiffs' claim in this case.  (*Id.* 7-8.)  Consequently, Oak Grove concludes, Plaintiffs can succeed in this case only to the extent that the court determines that the Alabama state court wrongly approved the 2002 settlement agreement.  (Oak Grove's Mem. of Law in Support of Mot. 20) (doc. 10).

### A.       Standard of Review for Subject Matter Jurisdiction

Typically, a court may not consider materials outside the pleadings in deciding a motion to dismiss.  *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).  "[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1)," however, "the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6)."  *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).  Because the issue presented by a motion to dismiss under Rule 12(b)(1) is "the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the exercise of its power to hear the case."  *Id.*  Accordingly, the court considers the parties' evidentiary submissions, including Plaintiffs' Exhibits 1-4, which

Defendants moved to strike; but the court strikes Exhibit 5 as irrelevant to the court's determination of subject matter jurisdiction.  *See* Mem. Op. & Order (Aug. 14, 2007) (doc. 36).

### B.   The *Rooker-Feldman* Doctrine

In challenging the court's jurisdiction to hear this dispute, Defendant Oak Grove argues that the *Rooker-Feldman* doctrine prohibits the exercise of jurisdiction over Plaintiffs' claim.  The court disagrees.

### 1.   Origins of the *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine claims its origins in the 1923 case of *Rooker v. Fidelity Trust*, 263 U.S. 413 (1923).  In *Rooker*, parties unhappy with their state court result turned to the federal courts to "null and void" the state court decision as a violation of the U.S. Constitution. 263 U.S. at 414-15.  "If the [state court] decision was wrong," the Supreme Court observed, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding."  *Id.* at 415.  Federal district courts are not appropriate fora for such appellate proceedings, the Court continued; they possess "strictly original" jurisdiction.  *Id.* at 416.

Sixty years later, in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court again barred plaintiffs aggrieved by a state court decision from seeking relief in the federal courts. The *Feldman* plaintiffs challenged in federal court the District of Columbia's highest court's denial of their petitions for waiver from the District's rule requiring bar applicants to have graduated from accredited law schools.  *Feldman*, 460 U.S. at 472-73.  After first determining that the District of Columbia court's actions were "judicial in nature," *id.* at 479-82, the Court held that the federal district court lacked subject matter jurisdiction to review the denial of the plaintiffs' waiver petitions because only the Supreme Court may review final state court

-6-

judgments in judicial proceedings.  *Id.* at 482.  The Court noted, however, that the plaintiffs could

have challenged the constitutionality of the District of Columbia's bar rules so long as they did

not seek review of a final state court judgment in a judicial proceeding.  *Id.* at 486.  From these

two cases emerged the *Rooker-Feldman* doctrine.

### 2. *Exxon Mobil*

The Supreme Court has not dismissed an action for lack of subject matter jurisdiction

under the *Rooker-Feldman* doctrine since its decision in *Feldman*.  Because "the lower federal

courts have variously interpreted the *Rooker-Feldman* doctrine to extend far beyond the contours

of the *Rooker* and *Feldman* cases," however, the Court clarified application of the doctrine in

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005).  Neither party in this

case cited this unanimous Supreme Court decision.  In *Exxon Mobil*, the Supreme Court held that

the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired

its name: cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments."  544 U.S. at 284.

Several courts of appeals have applied this holding in its literal sense, refusing to use

*Rooker-Feldman* to bar claims that do not "seek[] redress for an injury caused by the state-court

decision *itself*."  *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2006) (emphasis

added); *see also McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) (holding that

certain claims were not barred under *Rooker-Feldman* because plaintiff did not allege that the

state court judgments "in and of themselves violate . . . federal law"); *Bolden v. City of Topeka*,

441 F.3d 1129, 1139 (10th Cir. 2006) ("When the state-court judgment is not itself at issue, the

doctrine does not prohibit federal suits regarding the same subject matter, or even the same

claims, as those presented in the state-court action."); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005) (discussing "the requirement that the state-court judgment be the source of the injury").

Claims alleging injuries caused by a *defendant's* action rather than the state court decision itself are not barred by *Rooker-Feldman* even if the claims were raised before the state court. *Davani*, 434 F.3d at 719. The Second Circuit has explained the limited effect of *Rooker-Feldman* under *Exxon Mobil* through the following hypothetical:

> Suppose a plaintiff sues his employer in state court for violating . . . anti-discrimination law and . . . loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Hoblock*, 422 F.3d at 87-88. Rather, under these circumstances, "state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293 (citation and quotation marks omitted).

This court agrees with the reasoning presented in these decisions, and under this reading of *Exxon Mobil*, Plaintiffs' claim of dangerous dust accumulation caused by *Defendants' action or inaction* does not fall within the category of claims to which *Rooker-Feldman* applies. Even if, as Defendants argue, the claims are indistinguishable from those subject to the parties' 2002 settlement agreement, the proper analysis would be under the principles of *res judicata* – not *Rooker-Feldman*. Therefore, *Rooker-Feldman*, as most recently explained in *Exxon Mobil*, does not divest this court of subject matter jurisdiction over Plaintiffs' claim.

### 3.   The Eleventh Circuit's *Rooker-Feldman* Test

At this time, the Eleventh Circuit Court of Appeals has not endorsed the same analysis under *Exxon Mobil* as those courts of appeals discussed in the previous section.  Instead, it has consistently applied the *Rooker-Feldman* doctrine to divest a federal court of subject matter jurisdiction if:  (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court either was adjudicated by the state court or was inextricably intertwined with the state court's judgment.  *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003).

Under this test, "[a] federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."  *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).  If the federal claim[3] can succeed without "calling into doubt the state court decision," the federal claim will not be barred.  *Id.* at 1334.  That is, the *Rooker-Feldman* doctrine divests a federal court of subject matter jurisdiction where the relief requested requires determining that the state court decision was wrong or voiding the state court's ruling.  *See Indus. Commc'ns & Elecs., Inc. v. Monroe County*, 134 F. App'x 314, 317 (11th Cir. 2005) (citation omitted); *Goodman*, 259 F.3d at 1332.  Unlike the *Exxon Mobil* formulation, the "inextricably intertwined" test is not limited to cases in which the state court

---

[3] The term "federal claim," as used in *Rooker-Feldman* analysis, encompasses both federal question claims and state law claims in federal court based on diversity of the parties.  *See King v. Epstein*, 167 F. App'x 121, 124 (11th Cir. 2006) (applying *Rooker-Feldman* to claims under diversity jurisdiction).

judgment *itself* causes the alleged injury, but may also bar a federal claim arising from a defendant's conduct.

Since the *Exxon Mobil* decision, the Eleventh Circuit has not encountered a case in which resolution diverges between the simple *Exxon Mobil* inquiry and this circuit's traditional four-part *Amos* test. Rather, the post-*Exxon Mobil* cases to come before the Eleventh Circuit Court of Appeals have been blatant, direct challenges to state court actions, sometimes even naming the state court judges themselves as defendants in the federal action. *See, e.g.*, *Force v. Kolhage*, 198 F. App'x 827 (11th Cir. 2006) (barring action against state court judges who denied plaintiff relief); *Herskowitz v. Reid*, 187 F. App'x 911 (11th Cir. 2006) (barring action against three-judge state appellate panel that reversed state trial court judgment in plaintiff's favor); *Ransom v. Georgia*, 181 F. App'x 776 (11th Cir. 2006) (barring claim challenging state court's disposition of the matter); *May v. Capote*, 149 F. App'x 913 (11th Cir. 2005) (barring action seeking declaration that state court decisions were unconstitutional). Consequently, the Eleventh Circuit has not determined whether *Exxon Mobil* necessitates modification of the *Amos* test. *See Morris v. Wroble*, 206 F. App'x 915, 919 n. 4 (11th Cir. 2006) ("We do not decide whether . . . *Exxon Mobil* require[s] us to modify in any way our above four-part *Amos* test, because [plaintiff]'s claims fail under either test.").

Although the Supreme Court did not explicitly address the "inextricably intertwined" language in *Exxon Mobil*, the Court's dissatisfaction with lower courts' confusion of *Rooker-Feldman* and "the ordinary application of preclusion law," *Exxon Mobil*, 544 U.S. at 283, led the Fourth, Sixth, and Tenth Circuits to hold expressly that *Feldman*'s "inextricably intertwined" language does not create an additional legal test. *See, e.g.*, *Davani*, 434 F.3d at 719; *McCormick*, 451 F.3d at 395; *Bolden*, 441 F.3d at 1141. Although this court anticipates that, in the

-10-

appropriate case, the Court of Appeals will modify the *Amos* test based on the same rationale from

the Supreme Court's decision in *Exxon Mobil*, because it has not yet done so, the court must now

evaluate its jurisdiction under the controlling precedent of this circuit.  Like others before it, this

court is "mindful that any decision to follow the changing tide and declare that the 'inextricably

intertwined' concept is obsolete must come from the Court of Appeals and not from a trial court."

*In re Stuart*, 367 B.R. 541, 2007 WL 1032261, at *5 (Bankr. E.D. Pa. Apr. 6, 2007).

### 4.    Application of the Eleventh Circuit Test

As stated above, courts in the Eleventh Circuit must examine four factors to determine

whether the *Rooker-Feldman* doctrine applies to a case:  (1) whether the party in federal court is

the same as the party in state court; (2) whether the prior state court ruling was a final or

conclusive judgment on the merits; (3) whether the party seeking relief in federal court had a

reasonable opportunity to raise its federal claims in the state court proceeding; and (4) whether the

issue before the federal court either was adjudicated by the state court or was inextricably

intertwined with the state court's judgment.  *Amos*, 347 F.3d at 1265 n.11 (11th Cir. 2003).

Here, the first two factors of the *Amos* test are satisfied.  Plaintiffs do not dispute that they

were members of the plaintiff class before the state court.  (Pls.' Resp. 2-3.)  Likewise, the state

court's October 23, 2002 final judgment approving the settlement agreement was a conclusive

judgment on the merits, for which the time to appeal has expired.  *See* Ala. R. App. P. 4 (requiring

notice of appeal to be filed within forty-two days of entry of judgment).  Resolution of *Amos*'s

third and fourth factors – whether Plaintiffs had a reasonable opportunity to raise their claim

before the state court and whether the issue is inextricably intertwined with the state court

judgment – depends upon *when* Plaintiffs' claim arose and the underlying *cause* of the alleged injury.[4]

The 2002 settlement agreement between the parties resolved "all known and unknown claims that Class members . . . may presently have or in the future may have . . . by reason of, arising from or in any way relating in whole or in part to any discharge or release of particulate matter or other airborne emissions *during the Applicable Time Period*." (Settlement Agreement ¶ 3.1) (emphasis added). The Applicable Time Period was January 1, 1990 through December 22, 2002. In consideration of this release, Defendants agreed to undertake a number of remedial measures "to facilitate the goals of eliminating or minimizing particulate matter and other airborne emissions affecting the plaintiff class." (*Id.* ¶ 3.2.)

Oak Grove argues that the accumulated dust about which Plaintiffs now complain is produced from the same sources as the airborne dust that was the subject of the state proceeding (Oak Grove's Mem. of Law for Evid. Hr'g 7); similarly, Oak Grove states that "one of the likely potential results of the 'discharge, emission or release of particulate matter' is the creation of accumulations of the discharged material" (Oak Grove's Mem. of Law in Support of Mot. 19). Therefore, Oak Grove concludes, the claims in both cases are indistinguishable and the accumulation claim can succeed only to the extent the court determines that the state court's approval of the settlement agreement was incorrect. (*Id.* 20.) Oak Grove goes so far as to conclude that the accumulation claim "is among those resolved by [the state court judgment]." (*Id.* 22.)

---

[4] As the court will discuss in part IV.A, *infra*, these same two factors determine the preclusive effect of the settlement agreement and state court judgment approving it. This overlap is characteristic of the Supreme Court's concerns with lower courts' extension of *Rooker-Feldman* to supersede ordinary application of preclusion law. *See Exxon Mobil*, 544 U.S. at 283.

This court disagrees with Oak Grove's conclusions based on the evidence before it. Defendants have failed to contradict Plaintiffs' evidentiary affidavit, which indicates that dust accumulation did not reach allegedly dangerous levels until July 2003 – months after termination of the Applicable Time Period covered by the settlement agreement – and that Plaintiffs did not discover the hazard until January 2006. That the alleged dangerous accumulation did not become public knowledge until January 2006 is sufficient to resolve the *Rooker-Feldman* question under the third factor of the *Amos* test. Plaintiffs had no reasonable opportunity in 2002 to raise a claim of which they had no knowledge until 2006.

Whether the claim is "inextricably intertwined" under the fourth factor, however, does not depend upon the time of Plaintiffs' *discovery* because the settlement agreement also resolved "unknown" claims. Rather, the accumulation claim is inextricably intertwined with the state court judgment if Plaintiffs' success requires this court, in essence, to void the state court's approval of the 2002 settlement agreement. That question, in turn, depends upon the *cause* of the alleged accumulations: specifically, whether the accumulation is the result of emissions occurring during the Applicable Time Period – *i.e.*, prior to December 22, 2002.

Even assuming the accumulation did not reach dangerous levels until July 2003, the cause of such accumulation remains disputed. Naturally, Oak Grove argues that accumulation only occurs from emissions, and, therefore, Plaintiffs' claim falls within the 2002 settlement agreement. (Oak Grove's Mem. of Law for Evid. Hr'g 7.) Plaintiffs' affiant, UMWA District Vice President Daryl Dewberry, on the other hand, concludes that failure to properly maintain the Plant and employee cutbacks were the true causes of the allegedly hazardous accumulation. (Dewberry Aff. 10.) The class action complaint in state court sought redress for *airborne* dust polluting the air where class members resided and settling on their real and personal property.

(Pls.' Supp. Br. 6) (doc. 32).  Accordingly, the remedial measures in the settlement agreement were "designed almost exclusively to minimize the *production* of dust."  (Oak Grove's Mem. of Law for Evid. Hr'g 7) (emphasis in original).  If the hazardous accumulation complained of now is instead due to improper maintenance and inadequate staffing, then it would occur regardless of the *amount* of dust *produced* or emitted, and, therefore, would not implicate the 2002 settlement agreement.

In this case, Plaintiffs' claim that Defendants have allowed dust to *accumulate* to dangerous proportions, *after* the time period to which the settlement agreement applies, does not implicate the propriety of the state court's approval of the settlement agreement concerning emissions occurring between 1990 and 2002.  That the settlement agreement included some remedial measures that may relate to the collection and storage of dust does not alter this conclusion.  Here, Plaintiffs primarily seek removal of the dangerous accumulation rather than better collection and storage methods, but even some overlap between a federal court's remedies and the state court's continued supervision of the injunctive relief would not divest the court of subject matter jurisdiction under *Rooker-Feldman* if it does not "call into doubt" the state court decision. *Goodman*, 259 F.3d at 1334; *see also Adkins v. Rumsfeld*, 464 F.3d 456, 469 (4th Cir. 2006) (recognizing that "the test is not whether the relief sought in the federal suit 'would certainly upset' the enforcement of a state court decree, . . . but rather whether the relief would 'reverse or modify' the state court decree") (citing *Exxon Mobil*, 544 U.S. at 284)).

The court concludes that the *Rooker-Feldman* doctrine does not divest it of subject matter jurisdiction over this case because Plaintiffs' claim satisfies neither the third nor fourth factors of the Eleventh Circuit's *Amos* test.  Plaintiffs could not possibly have raised a claim before the state court of which they had no knowledge and which had not arisen at the time of the final state court

judgment.  Moreover, because success in this court on the basis of dangerous accumulation in no way leads to the conclusion that the state court wrongly approved remedial measures to prevent airborne particulate and emissions from settling on Plaintiffs' properties, Plaintiffs' claim in this case is not "inextricably intertwined" with the state court judgment approving the settlement agreement related to airborne emissions.  Having satisfied itself that it possesses jurisdiction over Plaintiffs' complaint, the court now considers Defendants' remaining arguments.

### III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants PinnOak Resources, LLC; PinnOak Coal Sales, LLC; Natural Resource Partners, L.P.; and Questar Management Company, LLC move for dismissal or, in the alternative, for summary judgment on the basis that "none of them is now, nor have any of them ever been, the owner, operator, manager, or lessee of the Concord Coal Preparation Plant at issue in this lawsuit." (Defs.' Mot. 2.)  Rather, they argue, Defendant Oak Grove is the sole owner and operator of the Plant.  (Defs.' Reply 4.)  According to Defendants, PinnOak Resources is the parent of Oak Grove, but Defendants assert that it does not own, manage, lease or operate the Plant.  (*Id.*)  PinnOak Coal Sales is a wholly-owned subsidiary of PinnOak Resources that occasionally sells coal mined and prepared at the Plant, but does not own, manage, lease or operate the Plant.  (*Id.*)  Natural Resource Partners owns the coal reserves being mined by Oak Grove; it and Oak Grove are parties to a long-term lease of these coal reserves.  (*Id.*)  According to Defendants, however, Natural Resource Partners has no role in the operation of the mine.  (*Id.* 4-5.)  Questar manages private equity funds, some of which own membership interests in PinnOak Resources, but Defendants state that neither Questar nor any of its managed funds are involved in the daily operations at the Plant.  (*Id.* 5.)

Because the parties submitted affidavits and other exhibits in support of and in opposition to this motion, the court construes it as a motion for summary judgment, and, accordingly, applies the appropriate standard of review. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 (11th Cir. 2006) (noting that "once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment" (citations omitted)).

### A.      Standard of Review for Summary Judgment

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact exist. Fed. R. Civ. P. 56. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). However, disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Id.* at 247-48. A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 251-52.

Furthermore, when the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All evidence and inferences drawn from the underlying

-16-

facts must be viewed in the light most favorable to the nonmovant.  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  The court must avoid weighing conflicting evidence or making credibility determinations.  Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000) (quotation marks and citation omitted). Where a reasonable fact finder may "draw more than one inference from the facts, then the court should refuse to grant summary judgment."  *Id.*

**B.      Discussion**

Plaintiffs attempt to rebut Defendants' assertions that none of the Defendants other than Oak Grove owns, operates, or manages the Plant by submitting several exhibits.[5]  Plaintiffs presented a deposition transcript and trial transcript from two separate state court cases involving PinnOak Resources, in which employees at the Plant state their beliefs that PinnOak Resources employs all workers at the Plant.  (Pl.'s Evid. Sub., Exs. A, B.)  Plaintiffs submitted an answer previously filed in a state court workers' compensation case, in which the defendant in that action, PinnOak Resources, stated:  "defendant admits that it employed plaintiff commencing June 30, 2003, at which time defendant purchased the assets of U.S. Steel Mining Company, LLC."  (*Id.*,

---

[5] Defendants argue that Plaintiffs' exhibits are unauthenticated and cannot be considered by the court in ruling on this motion.  (Defs.' Reply 6.)  As Oak Grove recognizes in its separate motion to dismiss, however, the court may take judicial notice of court documents and the position taken by one or more of the Defendants in those documents. (*See* Oak Grove's Mem. of Law 18 n.8) (citing *Philips Med. Sys. Int'l v. Bruetman*, 982 F.2d 211, 215 n. 2 (7th Cir. 1992); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).  Newspapers and other periodicals are generally self-authenticating.  Fed. R. Evid. 902(6).  In any case, the court "may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'"  *Macuba v. Deboer*, 193 F.3d 1316, (11th Cir. 1999) (citations omitted).  Plaintiffs could feasibly authenticate most of the exhibits and overcome hearsay objections at trial; the exhibits, therefore, are properly before the court for consideration at this stage of the proceedings.

Ex. C.)  In addition, Plaintiffs submitted an Oak Grove mine employee absentee report on

PinnOak Resources letterhead, descriptions from the PinnOak Resources website, PinnOak

Resources press releases, and articles from periodicals, all of which include similar statements

alluding to PinnOak Resources' "operation" of the Oak Grove mine.  Plaintiffs also submitted a

Natural Resource Partners press release,  a page from Questar's website, and an MSHA database

entry indicating that Oak Grove is the "operator" and Questar the "controller" of the Oak Grove

mine, as defined at 30 C.F.R. § 701.5 (2006).  Subsequently, Plaintiff supplemented this

submission with additional similar documents, some of which describe the sale-leaseback

relationship between Natural Resources Partners and PinnOak Resources.  *See* Mem. Op. & Order

(Aug. 14, 2007) (doc. 36) (granting Plaintiffs' Motion for Leave to Supplement Submission).

These exhibits raise genuine issues of disputed fact as to the roles of PinnOak Resources,

Natural Resource Partners, and Questar in the ownership, operation, and management of the Plant.

Defendants themselves appear to have represented to the public, as well as to judicial and

regulatory bodies, that they own, operate, or manage the Oak Grove mine.  Plaintiffs have not,

however, presented sufficient evidence to raise a genuine issue of material fact regarding

Defendant PinnOak Coal Sales.  Therefore, Defendants' Motion to Dismiss or, in the Alternative,

for Summary Judgment is hereby denied in part and granted in part.  Specifically, the motion for

summary judgment is granted *only* as to Defendant PinnOak Coal Sales, LLC, and denied as to the

other Defendants.

## IV.  OAK GROVE'S MOTION TO DISMISS

In its Motion to Dismiss, in which the remaining Defendants joined, Oak Grove argues

that Plaintiffs' claim is barred by *res judicata*, release, and accord and satisfaction; that Plaintiffs

are not proper parties to bring a public nuisance claim; and that Plaintiffs' claim must be

dismissed because the MSHA has primary jurisdiction over the alleged safety violations.

    **A.**    *Res Judicata***, Release, and Accord and Satisfaction**

Oak Grove argues that Plaintiffs' claim in federal court is barred by principles of *res*

*judicata* based on the state court's approval of the 2002 settlement agreement.  Second, Oak

Grove argues that the settlement agreement released the claim at issue because the agreement

encompasses "known and unknown claims for present and future damages or remedies."  (*See*

Settlement Agreement ¶ 9.)  Finally, Oak Grove argues that the remedial measures instituted by

the settlement agreement constitute accord and satisfaction of Plaintiffs' claim.

Oak Grove's submission of and reliance upon documents related to the 2002 settlement

agreement and the state court judgment approving the settlement agreement necessitate

conversion of its Motion to Dismiss into a motion for summary judgment.  *See Garfield*, 466 F.3d

at 1260 (noting that "once the court decides to accept matters outside the pleading, it must convert

the motion to dismiss into one for summary judgment" (citations omitted)); *D&K Props. Crystal*

*Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 259 n. 1 (7th Cir. 1997) ("Because *res judicata* is

an affirmative defense that often requires the court to consider matters outside the complaint, the

district court construed [defendant's] motion to dismiss as a motion for summary judgment.").

Therefore, the court evaluates the motion under the summary judgment standard of review

previously discussed.

*Res judicata* will act as a bar to a subsequent action if four elements exist: "(1) a prior

judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial

identity of parties, and (4) with the same cause of action presented in both actions."  *Kizzire v.*

*Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308-09 (11th Cir. 2006) (quoting *Equity Res. Mgmt.*,

*Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998)).  A class action settlement is entitled to *res judicata* effect against all class members.  *Providian Nat'l Bank v. Pritchett*, 846 So. 2d 1072, 1075 (Ala. 2002).  The application of *res judicata* in this case turns upon whether this claim presents "the same cause of action" as the state court claims.  Similarly, Defendants will prevail under release and accord and satisfaction if the accumulation claim falls within the claims subject to the settlement agreement.

Plaintiffs' claim in this court is based on private nuisance, as was one of the claims averred in state court.  Whether these two nuisance claims present "the same cause of action" for *res judicata*, and whether the accumulation claim is subject to the 2002 settlement agreement for purposes of release and accord and satisfaction, depend upon the *time* at which the accumulation reached allegedly dangerous levels and the *cause* of the accumulation.  Thus, Defendants' arguments fail for the same reasons discussed previously in connection with the last two factors of the Eleventh Circuit's four-part *Rooker-Feldman* test.

In state court, Plaintiffs complained of injury *outside* the Plant; here, they complain of a dangerous condition *inside* the Plant.  As discussed in more detail in section II.B.4 above, the settlement agreement and corresponding state court judgment disposed of claims related to the negative effects of airborne particulate caused by emissions occurring prior to December 22, 2002.  Plaintiffs have submitted evidence that the accumulation did not reach allegedly dangerous levels until months after the state court's final judgment; in addition, Plaintiffs allege that the accumulation is caused by "poor housekeeping" and inadequate staffing rather than uncontrolled emissions.  At the very least, therefore, Plaintiffs raise genuine issues of material fact as to whether the claim before this court is the same cause of action as that presented to the state court

or was among the claims released by the settlement agreement.  Consequently, summary judgment is improper at this time.

### B.      Proper Plaintiffs to Nuisance Claim

Oak Grove next argues that the complaint must be dismissed because Plaintiffs are not proper parties to bring a public nuisance action based on allegations that accumulation at the Oak Grove mine "threatens the continued existence of the Concord Community itself."  (Oak Grove's Mem. of Law 33-34) (quoting Compl. ¶ 1).  This argument attacks the legal sufficiency of the complaint under Federal Rule of Civil Procedure 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.  In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).  To succeed on a motion to dismiss under Rule 12(b)(6), therefore, a defendant must demonstrate that the plaintiff has failed to give sufficient notice of a proper claim and the grounds upon which that claim rests.

Actions for both private and public nuisance exist under Alabama law.  "'A public nuisance is one which damages all persons who come within its sphere of operation, though it

may vary in its effects on individuals.  A private nuisance is one limited in its injurious effects to one or a few individuals.'"  *Russell Corp. v. Sullivan*, 790 So. 2d 940, 951 (Ala. 2001) (quoting Ala. Code § 6-5-121).  The distinction between private nuisance and public nuisance is an important one.  *See Russell Corp.*, 790 So. 2d at 951.  The most significant difference between the two is that "'[a] private nuisance gives a right of action to the person injured' while 'a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state.'"  *Id.* (quoting Ala. Code § 6-5-121).

Defendants' argument is little more than criticism of the complaint for lack of specificity.  Indeed, the complaint is not a model of clarity, but Plaintiffs do present their claim as one for "legal nuisance under Alabama law" (Compl. ¶¶ 9, 48), and allege that the accumulation "constitutes a private nuisance, public nuisance and statutory nuisance under Alabama law" (*Id.* 12-13).  Although a threat to the entire community could be construed as a public nuisance to which the Plaintiffs are not proper parties, the complaint itself must be the focus of the court's evaluation of Oak Grove's Motion to Dismiss.  Fed. R. Civ. P. 12(b)(6).

The complaint before the court is narrowly drafted to encompass a cause of action limited to thirteen named Plaintiffs for the nuisance affecting their livelihoods and individual properties.  Plaintiffs make specific averments regarding the nature of the nuisance by describing the accumulation of coal dust float at the Plant, Defendants' continued and reckless disregard of safety rules against such dust accumulations, and Defendants' blatant disregard of federal regulatory citations for violations of mine safety rules.  Plaintiffs specifically allege that, as a result of these actions, Defendants have interfered with Plaintiffs' rights of quiet enjoyment of their private, individual properties (Compl. ¶ 48); the risk of explosion affects the value of Plaintiffs' properties (*Id.* ¶ 51); and Defendants' actions threaten Plaintiffs' individual health and

safety (*Id.*).  Accordingly, Plaintiffs have stated a set of facts supporting a cause of action for

private nuisance, whether at common law or under sections 6-5-120 and 6-5-121 of the Alabama

Code, and Oak Grove's Motion to Dismiss on that basis is denied.

### C.      Primary Jurisdiction

Oak Grove's final argument is that the doctrine of primary jurisdiction requires dismissal,

or at least a stay; Oak Grove contends that the MSHA should "remediate these issues at the

Plant."  (Oak Grove's Mem. of Law in Support of Mot. 35.)   The primary jurisdiction doctrine "is

a doctrine specifically applicable to claims properly cognizable in court that contain some issue

within the special competence of an administrative agency."  *Reiter v. Cooper*, 507 U.S. 258, 268

(1993).  Judicial deference to agency expertise in particular areas is warranted if a claim that is

"originally cognizable in the courts . . . requires the resolution of issues which, under a regulatory

scheme, have been placed within the special competence of an administrative body."  *United*

*States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).  The doctrine recognizes that if "the inquiry is

one of fact and of discretion in technical matters," *id.* at 66, then resolution of the inquiry by the

court "is tantamount to engaging in judicial guesswork."  *Id.* at 68.

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case

the question is whether the reasons for the existence of the doctrine are present and whether the

purposes it serves will be aided by its application in the particular litigation."  *Columbia Gas*

*Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 519 n.15 (5th Cir. 1981) (quoting *W.*

*Pac. R.R.*, 352 U.S at 64).  Examining the doctrine's purposes, one magistrate judge for this

jurisdiction has enumerated five factors to guide a judge's decision to defer to an agency: (1) the

degree of an agency's discretion over the matter; (2) the relative expertise of the agency and the

courts in making the required determinations; (3) the need for uniformity; (4) the clarity of any

pre-existing agency pronouncements; and (5) the status of any on-going proceedings before the

agency.  *Self v. BellSouth Mobility*, 111 F. Supp. 2d 1169, 1173 (N.D. Ala. 2000); *see also*

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 842-43 (D.N.M.

1994) (discussing five similar factors for environmental cases).

A court, in its discretion, may refer a matter to a regulatory agency or dismiss the case in

deference to an agency's expertise under the primary jurisdiction doctrine only where a "strong

possibility" exists that an agency decision would put an end to the dispute or at least would serve

as a "material aid in ultimately deciding" the issues presented to the district court.  *Sprint Corp. v.*

*Evans*, 846 F. Supp. 1497, 1505 (M.D. Ala. 1994) (quoting *Carter v. AT&T*, 365 F.2d 486, 499

(5th Cir. 1966) and *Ricci v. Chicago Merc. Exch.*, 409 U.S. 289, 305 (1973)).  Moreover, in

determining whether to exercise its discretion, the district court must first be satisfied that the

particular agency has jurisdiction over the issue presented.  *Self*, 111 F. Supp. 2d at 1173 (citing

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996)).

The court questions whether Plaintiffs' claim in this case falls within the MSHA's

jurisdiction.  The MSHA was formed under and is operated pursuant to the Federal Mine Safety

and Health Act of 1977, the purpose of which is to protect the *safety of the miner*.  30 U.S.C. §

801; *see also Westmorland Coal Co. v. Fed. Safety & Health Review Comm'n*, 606 F.2d 417, 419-

420 (4th Cir. 1979) ("The purpose of the Federal Coal Mine Health and Safety Act is to protect

the safety of the miner.").  Plaintiffs, of course, are not miners who fall within the act's purpose of

workplace protection.  MSHA's ability to address Plaintiffs' private nuisance action, therefore, is

doubtful at best.

Application of the five "guidance" factors also weighs against referral to the MSHA or a

stay pending MSHA action.  Defendants have not demonstrated that MSHA proceedings have

been initiated or are likely to commence.  At this time, the possibility of conflicting orders of this

court and MSHA is highly speculative, and uniformity of enforcement would not be undermined

by this court's jurisdiction.  In the four years that Defendants have owned and operated the Plant,

MSHA has taken no remedial action despite issuing approximately eighty separate citations for

dangerous accumulations.  (Dewberry Aff. 7.)  Issuing repeated citations without further

compliance enforcement hardly offers "clarity" to the issue and further weighs against this court's

dismissal under the primary jurisdiction doctrine.  *See Schwartzman*, 857 F. Supp. at 843

("Administrative delay constitutes reason to retain jurisdiction.").

Although the MSHA does possess expertise in this area, Defendants' argument that this

court is incompetent to examine and consider issues such as the level at which accumulations

become hazardous and the feasibility of remedies (Oak Grove's Mem. of Law in Support of Mot.

39) is simply wrong.  The agency is not the *only* expert, or for that matter, the *better* expert.

Indeed, upon presentation of evidence, this court is quite capable of determining whether a danger

exists, and certainly may rely upon the assistance of experts to resolve such issues.  *See* Fed. R.

Evid. 702.   Because the MSHA's jurisdiction and willingness to pursue remedial action are

dubious, this court doubts that Plaintiffs' claim could be resolved before the agency.  Yet the court

is capable and ready to resolve the issues before it.  Therefore, the doctrine of primary jurisdiction

requires neither dismissal nor a stay, and Oak Grove's Motion to Dismiss on that ground is

denied.

## V.  CONCLUSION

The court concludes that the *Rooker-Feldman* doctrine does not divest it of jurisdiction

over this dispute.  Plaintiffs have raised genuine issues of material fact regarding *res judicata*,

release, and accord and satisfaction.  Likewise, they have alleged a set of facts supporting a

private nuisance claim sufficient to withstand a motion to dismiss.  Finally, the court, in its

discretion, declines to dismiss or stay the case under the primary jurisdiction doctrine because the

MSHA's ability and willingness to resolve the issue is doubtful.  Accordingly, Oak Grove's

Motion to Dismiss, in which the remaining Defendants joined, is DENIED.

Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is

GRANTED IN PART because Plaintiffs have failed to raise a genuine issue of material fact as to

PinnOak Coal Sales, LLC's involvement in the ownership, operation, or management of Plant

conditions contributing to Plaintiffs' alleged injury.  Accordingly, PinnOak Coal Sales, LLC is

DISMISSED from the case without prejudice; the motion is DENIED as to the remaining

Defendants.  The court will enter a separate order consistent with this memorandum opinion.

DATED this 31st day of August, 2007.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE