## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| EVA GAMBLE, et al., | ] |
| | ] |
| **Plaintiffs,** | ] |
| | ] |
| v. | ] |
| | ]    **CV-06-BE-4909-S** |
| PINNOAK RESOURCES, LLC, et | ] |
| al., | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

This case comes before the court on Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint (doc. 57).  For the reasons stated below, the court concludes that Plaintiffs lack

standing to bring their claims, and, thus, this court lacks subject matter jurisdiction over this

action.  Accordingly, the court will GRANT Defendants' motion to dismiss; Plaintiffs' amended

complaint will be DISMISSED WITHOUT PREJUDICE.

## I.  BACKGROUND

On July 31, 1996, a group of individuals later certified as a class, which included all

Plaintiffs in the case before this court,[1] filed a complaint in the Circuit Court of Jefferson County,

Alabama, Bessemer Division.  The complaint sought monetary damages and injunctive relief

based on the release of particulate matter and other airborne emissions from the operation of the

---

[1] The parties confirmed that all Plaintiffs named in the original complaint were in fact
class members in the prior state court case.  Plaintiffs' amended complaint withdrew one
Plaintiff, but added two, Jack and Joyce Franklin.  If the Franklins lived on, leased, or owned
their current Concord Community properties between January 1, 1990 and December 22, 2002,
they too were class members unless they opted out.  The Franklins' status in the class action,
however, is ultimately irrelevant to the current motion.  As discussed below, all Plaintiffs lack
standing for reasons unrelated to the prior state court action.

Concord Coal Preparation Plant.  The class claimed injuries to their properties and health based on air pollution and damages to real and personal property caused by airborne coal dust.

On October 4, 2002, the parties to the class action entered into a settlement agreement, in which the Defendants[2] agreed to a number of remedial measures in exchange for release, settlement, and compromise of "all known and unknown claims . . . by reason of, arising from or in any way relating in whole or in part to any discharge or release of particulate matter or other airborne emissions during the Applicable Time Period."  (Settlement Agreement §§ 3.1-5.1) (doc. 10, Ex. 3).  The Applicable Time Period was January 1, 1990 through December 22, 2002.  (*Id.* § 2.)  The circuit court approved the settlement agreement on October 23, 2002.  *See* Final Judgment Order, *White v. U.S. Steel Mining Co., LLC*, Case No. CV-97-626 (Ala. Cir. Ct. Jefferson County 2002) (doc. 10, Ex. 5).

On December 20, 2006, Plaintiffs filed a complaint in this court against the current Defendants.  Plaintiffs alleged that Defendants violated "federal and state safety regulations to the degree that they have allowed dangerous quantities of highly explosive and highly flammable materials [*e.g.*, coal float dust, coal fines, and coal dust] to accumulate within the plant."  (Compl. ¶ 2) (doc. 1).   Plaintiffs petitioned this court to order remediation, removal and/or neutralization of the materials, and installation of safety measures to prevent an explosion.  (*Id.* ¶ 8.)

On January 16, 2007, Defendants moved to dismiss Plaintiffs' action on a number of grounds.  After full briefing, oral arguments, and supplemental briefing, the court concluded that

---

[2] The defendants named in the state court complaint were U.S. Steel Mining Company, LLC; United States Steel Corporation; and KLee Processing, Inc.  Defendants in the action before this court are successors in interest to the state defendants.  The parties do not dispute that the settlement agreement released the state defendants' successors.  Therefore, for simplicity, this court simply uses "Defendants" throughout this memorandum opinion to refer to both the state defendants and federal Defendants because their distinction is immaterial for purposes of the issues before the court at this time.

the *Rooker-Feldman* doctrine did not divest it of subject matter jurisdiction.  The court then

concluded that Plaintiffs' complaint stated a cause of action for private nuisance affecting

Plaintiffs' livelihoods and individual properties.  The court noted:

> Plaintiffs make specific averments regarding the nature of the
> nuisance by describing the accumulation of coal dust float at the
> Plant, Defendants' continued and reckless disregard of safety rules
> against such dust accumulations, and Defendants' blatant disregard
> of federal regulatory citations for violations of mine safety rules.
> Plaintiffs specifically allege that, as a result of these actions,
> Defendants have interfered with Plaintiffs' rights of quiet enjoyment
> of their private, individual properties (Compl. ¶ 48); the risk of
> explosion affects the value of Plaintiffs' properties (*Id.* ¶ 51); and
> Defendants' actions threaten Plaintiffs' individual health and safety
> (*Id.*).

The court denied Defendants' motion to dismiss on the basis of primary jurisdiction, *res

judicata*, release, and accord and satisfaction.  The court did, however, dismiss one Defendant –

PinnOak Coal Sales, LLC – because Plaintiffs failed to raise a genuine issue of material fact[3] as to

PinnOak Coal Sales' ownership or operation of the Plant.

The court subsequently held a scheduling conference on September 26, 2007 to determine

the appropriate method of proceeding with the case.  At the scheduling conference, the court and

the parties discussed the advantages and disadvantages of bifurcating the case into two phases.  In

discussing the appropriate scope of discovery for phase I – whether a nuisance exists – Plaintiffs'

counsel represented to the court and Defense counsel that Plaintiffs were asserting only a claim

for "anticipatory nuisance."  Based on that representation, the court appropriately limited

discovery and in its scheduling order (doc. 44) directed Plaintiffs' counsel to "amend the

complaint to identify their nuisance cause of action as 'anticipatory nuisance,' including citation

_____

[3] Because both parties relied upon extrinsic evidence regarding each Defendant's
ownership and/or operation of the Plant, the court converted the motion to dismiss on that
particular ground into a motion for summary judgment.

to the appropriate legal foundation for 'anticipatory nuisance' under statute or the common law."

On November 5, 2007, Plaintiffs' experts inspected the Plant as part of the first phase of discovery.  On November 12, 2007, Plaintiffs mailed a letter to the court, indicating that,

> at least as of November 5, the Concord Prep Plant poses none of the threats as alleged in the Complaint, or which would otherwise give rise to a cause of action for private nuisance under Alabama law.  It would therefore appear Plaintiffs' claims for relief may be moot, at least in part.

Plaintiffs' counsel indicated that Plaintiffs' entire complaint was not moot because the complaint sought: (1) a permanent injunction requiring measures to prevent the risk of explosion and to bring the Plaint into compliance with certain regulations; and (2) "such other equitable relief as this Court deems just."

On December 3, 2007, Plaintiffs filed an amended complaint.  The amended complaint, for the most part, makes almost identical allegations as the original complaint.  The complaint alleges that Defendants allowed dangerous levels of coal dust to accumulate prior to January 2006.  Plaintiffs added to the amended complaint that Defendants cleaned the Plant prior to November 5, 2007, and, as a result, "the Plant did not pose the threat of fires and/or explosion as originally set forth in the Original Complaint."  (Am. Compl. ¶ 13).  Nevertheless, Plaintiffs allege that the "Defendants' maintenance and operation of the Plant . . . has and will continue to create the serious risk of explosion and/or serious injury to Plaintiffs as surrounding persons and property owners, and as such constitutes a nuisance under Alabama law."  (*Id.* ¶ 11).

On December 17, 2007, Defendants filed the current motion to dismiss Plaintiffs' amended complaint.  The parties have fully briefed the issues raised in the motion.[4]

_____

[4] The court notes that Plaintiffs' brief in opposition to the motion exceeded the thirty-page limit prescribed in Appendix II.  Because Plaintiffs did not request leave to exceed the page limit, the court will STRIKE all pages in excess of thirty (excluding the signature block).

-4-

## II.  STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction.   The party asserting federal subject matter jurisdiction bears the burden of proving its existence.  *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). The moving party may challenge subject matter jurisdiction either facially or factually.  *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n. 5 (11th Cir. 2003).  A "facial attack" is based <u>solely</u> on the pleadings and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction.  *Id.*  Further, for the purposes of the court's analysis of a facial attack, the allegations in the plaintiff's complaint are taken as true.  *Id.*

On the other hand, a "factual attack" challenges "subject matter jurisdiction in fact, irrespective of the pleadings."  *Morrison*, 323 F.3d at 925.  When a defendant factually attacks subject matter jurisdiction, "the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6)."  *Id.*  Because the issue presented by a motion to dismiss under Rule 12(b)(1) is "the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the exercise of its power to hear the case."  *Id.*

## III.  DISCUSSION

In their current motion to dismiss, Defendants argue: (1) Plaintiffs lack standing, and thus this court lacks subject matter jurisdiction, because Plaintiffs have not alleged an actual or imminent injury; (2) the court lacks subject matter jurisdiction because Plaintiffs' claim does not satisfy the jurisdictional amount-in-controversy requirement; and (3) this court should abstain

---

Fortunately for Plaintiffs, those pages address Defendants abstention argument, which the court does not reach.

from entertaining this lawsuit while parallel state court proceedings are being resolved.  Because the court concludes that Plaintiffs have failed to allege an actual or imminent injury, the court does not reach Defendants' arguments regarding the amount in controversy and abstention.

Article III of the U.S. Constitution confers upon this court jurisdiction over "cases" and "controversies."  U.S. Const. art. III, § 2.  To satisfy Article III standing requirements, a plaintiff must show (1) an injury-in-fact, (2) "fairly traceable" to the defendant's alleged action, and (3) redressable by the judicial process.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Thus, standing, at its most fundamental level, requires a plaintiff to state at a minimum "general factual allegations of injury resulting from the defendant's conduct."  *Bischoff*, 222 F.3d at 878.

Where, as here, a plaintiff seeks injunctive relief against <u>future</u> actions, the plaintiff must show "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (quoting *Lujan*, 504 U.S. at 560).  "Imminence" requires that the injury be "*certainly* impending."  *Id.* at 211 (quoting *Lujan*, 504 U.S. at 565 n. 2).  The imminent "concrete and particularized injury" must be shown by "specific, concrete facts."  *Cone Corp. v. Fla. Dep't of Transp.*, 921 F2d 1190, 1204 (11th Cir. 1991) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)) (internal quotation marks omitted).

Article III does not distinguish between a plaintiff who lacks standing at the beginning of case and one who loses standing during the course of litigation.  "Mootness is merely 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Tucker v. Phyfer*, 819 F.2d 1030, 1035 n. 6 (11th Cir. 1987) (quoting *U. S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  Thus, "[a] case becomes moot when the dispute between

the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit," *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994), such as where any relief the court might grant would be of no utility to the plaintiff. *See Tucker*, 819 F.2d at 1034 (citing C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3533 (2d ed. 1984)).

In this case, Defendants attack subject matter jurisdiction both facially and factually. They argue that the amended complaint itself fails to allege an imminent injury, yet they also point to extrinsic evidence – Plaintiff counsel's letter to this court. Plaintiffs also cite to extrinsic evidence in support of standing. The dispositive issue here, as discussed below, is that the Plaintiffs' inspection of the Plant revealed no nuisance. The court need not look beyond the amended complaint to conclude that it lacks subject matter jurisdiction because the amended complaint itself states that Plaintiff's November 5, 2007 inspection of the Plant "led Plaintiffs to conclude that at least as of the date of the inspection, the Plant did not pose the threat of fires and/or explosion as originally set forth in the Original Complaint." (Am. Compl. ¶ 13). Plaintiff counsel's November 12, 2007 letter goes one step further, admitting that the condition of the Plant does not "give rise to a cause of action for private nuisance" and that Plaintiffs' claim is "moot, at least in part." Thus, no "specific, concrete facts" point to an injury that is "certainly impending."

In their opposition to the Defendants' current motion to dismiss, Plaintiffs' primary arguments are that (1) their amended complaint uses the present tense – *i.e.*, the Plant remains a nuisance; and (2) the evidence Plaintiffs previously submitted to the court indicates that the Plant poses an imminent threat. These arguments are unpersuasive.

Most of the examples of "present tense" cited by Plaintiffs are legal conclusions, not facts. Others are undermined by Plaintiffs' specific statement of fact that the Plant was clean when recently inspected. Plaintiffs' legal conclusions get them nowhere; rather, Plaintiffs must allege

"enough factual matter (taken as true) to suggest" the required elements of their legal claims and "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Plaintiffs' statement – in both their amended complaint and the letter to this court – that the Plant "did not pose the threat" based on their inspection cannot be ignored. *See Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (recognizing that the court's "duty to accept the facts in the complaint as true does not require . . . [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations"). Thus, Plaintiffs' attempts in their brief to characterize their claim as a present nuisance based upon Plaintiffs' anticipation of fires caused by "massive accumulations of coal dust" is unavailing; according to Plaintiffs' own inspection, no "massive accumulations" presently exist at the Plant, and, therefore, injury to the Plaintiffs is merely conjectural and hypothetical.

In further support of their claim of a "present" nuisance, Plaintiffs argue that they may bring a cause of action to prevent conditions from <u>becoming</u> a nuisance. (Pls.' Br. 12-16) (relying upon Ala. Code § 6-5-125 (1975); *Sloss-Sheffield Steel & Iron Co. v. Prosch*, 67 So. 516 (Ala. 1917)). Plaintiff are correct that Alabama statute permits a court to "arrest a nuisance before it is completed." *See* Ala. Code § 6-5-125. Plaintiffs, however, conveniently ignore explicit language within that statute requiring that the injury be "not merely possible but to a <u>reasonable degree</u> <u>certain</u>." *See id.* (emphasis added). At the time of the most recent inspection the Plant did not pose a threat to Plaintiffs or their properties; the Plaintiffs have failed to demonstrate that a future threat is "to a reasonable degree certain."

The holding in *Prosch* likewise does nothing to alleviate Plaintiffs' lack of standing. The narrow holding of *Prosch* was as follows:

> That he who keeps stored, indefinitely, in a thickly settled
> neighborhood, large amounts of high explosives which are liable, as
> dynamite or gunpowder or other high explosives are liable, to
> explode and do serious injury to surrounding persons and property,
> is guilty of maintaining a nuisance . . . .  This rule, by its terms,
> <u>excludes</u> the idea that, if explosives are not kept in such large
> quantities in a thickly settled community as to do serious injury to
> surrounding persons and property if they explode . . ., such keeping
> is a nuisance.

*Prosch*, 67 So. at 520 (emphasis added).  This narrow holding indicates that a nuisance exists

where a person stores indefinitely in a populated area a dangerous amount of an inherently

hazardous substance; thus, the storage of large amounts of dynamite powder within 1,000 feet of a

thickly populated neighborhood was held to be a nuisance.  *Id.*  In contrast to such facts, Plaintiffs

in this case have not alleged that coal dust itself is <u>inherently</u> dangerous; in fact, a certain amount

of coal dust is inevitable and permitted by regulation.  Rather, the danger arises when coal dust

accumulates in a certain amount.  Thus, to constitute a nuisance as described by *Prosch*, the Plant

must contain a <u>dangerous amount</u> of coal dust accumulation.  Yet, as discussed above, the most

recent evidence concerning the Plant – Plaintiffs' own inspection – revealed no dangerous

accumulations.

Evidence previously submitted to this court that may have demonstrated the existence of a

nuisance <u>in the past</u> offers no support of a <u>present</u> nuisance or the imminence of <u>future</u> harm that

Plaintiffs must now allege to pursue their claims.  Based upon Plaintiffs' counsel representations

to this court – both in the amended complaint and counsel's letter to the court – any imminent

danger, if there ever was one, no longer exists.  "[T]he fact of past injury, 'while presumably

affording [the plaintiff] standing to claim damages . . . , does nothing to establish a real and

immediate threat that he would again' suffer similar injury in the future."  *Adarand*, 515 U.S. at

210-11 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  Accordingly, Plaintiffs'

nuisance claim has become moot.

As a corollary to these arguments, Plaintiffs also argue that Defendants cleaned the Plant, and thereby abated the nuisance, in direct response to Plaintiffs' original complaint in this court. They implicitly argue in their brief and explicitly state in their letter to the court that, as a result, they are entitled to attorneys' fees and costs as the "prevailing party." Indeed, the amended complaint itself requests attorneys' fees and costs. Defendants, of course, "vehemently deny that they have, in the past or presently, maintained a 'nuisance.'" (Defs. Br. 12). The court need not delve into this question because, even assuming Defendants did clean the Plant in response to the complaint, Plaintiffs have not "prevailed" in the manner required for an award of attorneys' fees. *See Buckhannon Bd. & Care Home Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (rejecting the notion that a plaintiff whose lawsuit prompts a defendant's voluntary change in conduct is entitled to attorneys' fees as a "prevailing party").

In conclusion, Plaintiffs' amended complaint, which seeks only forward-looking injunctive relief for an alleged nuisance, fails to allege concrete facts to demonstrate that injury is likely or imminent. In fact, Plaintiffs' complaint indicates that the most recent evidence available – their own inspection – showed no signs of dangerous coal dust accumulation. Although Plaintiffs have submitted evidence that the danger of explosion may have existed at some time in the past, they allege no injury-in-fact resulting from that alleged nuisance, and that evidence has no probative value as to the question of a present or future nuisance. Accordingly, the court must conclude that Plaintiffs lack standing; Defendants' motion to dismiss is due to be GRANTED.

## IV. CONCLUSION

For the reasons stated above, the court concludes that Plaintiffs have not sufficiently alleged a present or imminent injury-in-fact. Consequently, Plaintiffs lack standing to pursue their

claims, and this court lacks subject matter jurisdiction.  The court, therefore, will GRANT

Defendants' motion and will DISMISS this action without prejudice.  The court will enter a

separate order consistent with this memorandum opinion.

DATED this 15th day of April, 2008.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE